# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KARL C. DYTON, | : | |
| | : | |
| Plaintiff, | : | C.A. No.: K25C-06-023 JJC |
| | : | |
| v. | : | |
| | : | |
| ANDREW G. AHERN III, and | : | |
| JOSEPH W. BENSON, P.A., a | : | |
| Delaware Law Firm, | : | |
| | : | |
| Defendants. | : | |

Submitted: December 1, 2025
Decided:    December 5, 2025

## <u>ORDER</u>

On this 5th day of December 2025, having considered Defendant Andrew Ahern and Defendant Joseph W. Benson, P.A.'s (hereinafter collectively "Benson's") motion for reargument, and Plaintiff Karl C. Dyton's response in opposition, it appears that:

1.      Mr. Dyton sues Benson, in part, for alleged legal malpractice committed while Benson represented him in an underlying contract action. More specifically, the complaint alleges that Benson failed to prosecute the matter which led the Court to dismiss the action, *sua sponte* under Superior Court Civil Rule 41(e).[1]  Benson then allegedly took no action to reopen the judgment. Nor, as alleged, did Benson even inform Mr. Dyton that his case had been dismissed.

---

[1] The complaint also alleges that Benson failed to communicate with Mr. Dyton before the Court dismissed the matter, failed to tell Mr. Dyton that the Court had dismissed his case, and failed to communicate with Mr. Dyton for approximately eighteen months after the dismissal. Approximately eighteen months after the dismissal, the complaint alleges that Mr. Ahern, himself, remained unaware of the dismissal.

2. In response to Mr. Dyton's malpractice suit, Benson filed a motion to dismiss relying upon the applicable statute of limitations. The Court denied the motion on multiple grounds for the reasons explained in its November 2025 decision (the "Opinion").[2] As the Court wrote, dismissal was inappropriate because the complaint alleged sufficient facts to support the need to consider an evidentiary record before determining (1) when Mr. Dyton's legal malpractice claim accrued, and (2) whether one or more of three tolling doctrines applied.[3]

3. Benson moves for reargument and contends that the Court misapplied controlling law because it did not dismiss the suit under the statute of limitations. To that end, Benson asserts that, as a matter of law, the statute accrued on the day the Court dismissed the underlying action. Mr. Dyton unquestionably filed his suit more than three years after the dismissal. Benson's motion, however, declines to address the three potential tolling doctrines – any one of which may independently make Mr. Dyton's claims timely regardless of whether Benson later prevails regarding the date of accrual.

4. In a Superior Court Civil Rule 59(e) motion for reargument, the movant must demonstrate that the Court has overlooked controlling precedent or a legal principle, or misapprehended the law or facts in such a way that would have changed the underlying decision.[4] The mechanism does not permit litigants to restate arguments that the Court has already addressed and rejected. Here, Benson raises no new arguments.

5. For instance, Benson first contends that the Court erred because it did not apply the occurrence rule to determine when the statute of limitations accrued. On the contrary, the Court expressly applied the occurrence rule. In fact, when doing so, the Court explained in its Opinion why a case-specific application of the

---

[2] *Dyton v. Ahern, et al.,* 2025 WL 3232911 (Del. Super. Nov. 19, 2025).
[3] *Id.* at *1.
[4] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

occurrence rule for continuous negligent conduct may ultimately be necessary in this case, dependent upon where the facts later fall.[5]

6. Benson maintains that the Court should rule as a matter of law that Mr. Dyton's claims accrued at the point when the Court dismissed the underlying action. That argument ignores, however, the complaint's allegations that Benson acted negligently by failing to move to reopen the judgment of dismissal. As the Court explained in its Opinion, Superior Court Civil Rule 60 provided Benson a readily available option to attempt to do so.[6] Here, as pled, there is a conceivable—in fact more than conceivable—basis to infer that Benson breached its professional obligation after the date of dismissal by taking no action to reopen the judgment. If the facts bear out as pled, such negligence occurred *after the Court entered the judgment.* Mr. Dyton's claim for failing to reopen the judgment may be timely even if the occurrence in this case is viewed as a single, discrete act.

7. Moreover, Benson fails to acknowledge that the negligent conduct, as alleged, involved more than a single, discrete act. As the Court explained in its Opinion, where the "occurrence," itself, is comprised of continuing, inextricably intertwined negligent conduct that works in concert to bring about a harm, the "wrong" *is a continuing or continuous wrong.*[7] Here, the allegations in the complaint support a conceivable inference that the combination of (1) Benson's negligent failure to prosecute, and (2) Benson's continuing failure to file a motion to reopen the judgment constituted a continuing course of inextricably intertwined negligent conduct. Again, evidentiary context will be necessary to resolve when the cause of action accrued in this case given the allegations of continuing wrongs that spanned the representation, both before and after the dismissal.

---

[5] *See Dyton*, 2025 WL 3232911, at *5 ("As a result, continuing wrongs of this nature require a special application of the occurrence rule.").

[6] *Id.* at *6.

[7] *Id.*

8.     Next, Benson contends that legal malpractice actions should be treated differently from other tort actions as a matter of public policy. On the contrary, treating one aspect of negligence-driven tort law differently from others would be poor public policy and would ignore the appropriateness of applying the occurrence rule uniformly. The "wrong" in legal malpractice cases will sometimes not confine itself to a single act any more than would be the case were there to be continuous negligent medical treatment. Namely, the result appropriately remains the same in questions of accrual regardless of whether there is a continuing trespass on land, continuing negligent medical treatment, or continuing negligent legal representation. Tort law's general recognition that there may be continuous or continuing wrongs fits comfortably within the occurrence rule. It is merely a fact-specific application of that rule.

9.     Finally, Benson's motion for reargument is appropriately denied because, even if successful, it would not change the result. It seeks only partial reconsideration   and does not address whether one or more of the three tolling doctrines could independently make Mr. Dyton's action timely. As the Court explained, one or more of those justifications could conceivably apply notwithstanding when the claim accrued.[8] In summary as to tolling, the complaint alleges facts, when accepted as true, to support a conceivable inference that Mr. Dyton's filing may be timely on those additional grounds.

**WHEREFORE**, Defendant Andrew G. Ahern, III, and Joseph W. Benson, P.A.'s motion for reargument is **DENIED.**

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge

*Via File & ServeXpress*

---

[8] *Id.* at *7-11.

4